UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 21-738(DSD/TNL)

Maija Peterson-Rojas,

                    Plaintiff,

v.                                                          **ORDER**

Dakota County,
John Galloway aka Johnny Galloway
and Letty Galloway,

                    Defendants.


        Frederick L. Neff and Neff Law Firm, P.A., 7400 Metro
        Boulevard, Suite 165, Edina, MN 55439 for plaintiff.

        William M. Topka and Dakota County Attorney's Office, 1560
        Highway 55, Hastings, MN 55033 for defendant Dakota County.

        M. Gregory Simpson and Meagher & Geer, 33 South Sixth Street,
        Suite 4400, Minneapolis, MN 55402 for defendants John
        Galloway and Letty Galloway.


        This matter is before the court upon the motions for summary

judgment by defendant Dakota County and defendants John and Letty

Galloway.  Based on a review of the file, record, and proceedings

herein, and for the following reasons, the motions are granted.


                                **BACKGROUND**

        This dispute arises out of plaintiff Maija Peterson-Rojas's

claim  that  she  was  subject  to  sexual  harassment,  sex

discrimination,  and  retaliation  during  her  employment  with

defendant Dakota County as a juvenile probation officer. Peterson-Rojas specifically alleges that defendant John Galloway, a case manager in the community corrections department in the Dakota County juvenile services center, routinely harassed her and that Dakota County did nothing to stop him despite being aware of his behavior. Peterson-Rojas also alleges that defendant Letty Galloway - John Galloway's wife - defamed her by reporting false and malicious allegations of wrongdoing.

These circumstances escalated dramatically, leading Dakota County to launch two internal investigations of Peterson-Rojas following allegations that she engaged in sexual activity with a minor and sought to buy drugs from him. It is undisputed that during the investigations, Peterson-Rojas was placed on paid administrative leave. Peterson-Rojas was eventually exonerated and reinstated to her same position with the same pay and benefits. Peterson-Rojas ultimately left Dakota County to take a position with Hennepin County.[1]

On March 18, 2021, Peterson-Rojas commenced this action against the Galloways and Dakota County, alleging various claims under federal and Minnesota law including: sex discrimination, sexual harassment, and retaliation under Title VII and the Minnesota Human Rights Act (MHRA) by Dakota County; defamation by

---

[1]    Peterson-Rojas has since left Hennepin County under difficult circumstances that do not bear on this case.

the Galloways and Dakota County; and interference with prospective economic advantage by the Galloways and Dakota County.[2]    In response, the Galloways filed crossclaims against Dakota County alleging (1) a violation of Minn. Stat. § 260E.35 for disclosing that Letty Galloway reported that Peterson-Rojas had allegedly mistreated a minor; and (2) that Dakota County had a statutory obligation to defend and indemnify them with respect to the allegations in the complaint.    The court dismissed the indemnification crossclaim with prejudice but allowed the crossclaim under Minn. Stat. § 260E.35 to proceed as to the disclosure of Letty Galloway's identity.  See ECF No. 45.

Dakota County now moves for summary judgment on the claims brought by Peterson-Rojas and the crossclaim brought by Letty Galloway.   The Galloways also move for summary judgment on Peterson-Rojas's claims against them.

The court typically discusses the factual background as a whole before turning to the specific claims at issue but given the thicket of allegations presented, the court will discuss the material facts in the context of each claim.

---

[2]   Peterson-Rojas also alleged that John Galloway and Dakota County violated the Minnesota Data Practices Act but has since withdrawn that claim.

**DISCUSSION**

## I.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II.  Dakota County's Motion Against Peterson-Rojas

### A.  Employment Claims (Counts I and II)

Peterson-Rojas contends that Dakota County discriminated against her on the basis of sex, retaliated against her by placing her on paid administrative leave while it investigated allegations against her, and knowingly permitted her to be subject to sexual harassment, in violation of Title VII and the MHRA. See 42 U.S.C. § 2000e-2(a) (Title VII); Minn. Stat. § 363A.08, subdiv. 2 (MHRA).[3] Dakota County argues that these claims fail as a matter of law based on the ample record established during discovery. The court will turn first to the allegations of sex discrimination and retaliation.

#### 1.  Sex Discrimination and Retaliation

The parties agree that the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) applies to Peterson-Rojas's discrimination and retaliation claims because there is no direct evidence of either in the record. Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination or retaliation. Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009). The

---

[3]  The court applies the same analysis to claims under Title VII and the MHRA when, as here, the claims depend on identical facts and theories. See Torgerson v. City of Rochester, 605 F.3d 584, 594 (8th Cir. 2010) (Title VII and MHRA); Takele v. Mayo Clinic, 576 F.3d 834, 838 (8th Cir. 2009) (Title VII).

burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. See id. at 692-93. If the employer puts forth such a reason, the plaintiff then must produce evidence demonstrating that the employer's reason is pretext for unlawful discrimination. See id. at 693.

To establish a prima facie case of sex discrimination, Peterson-Rojas must show that she (1) is within the protected class, (2) was qualified to perform the job, (3) suffered an adverse employment action, and (4) has set forth facts that give rise to an inference of discrimination. Takele, 576 F.3d 838. Likewise, a prima facie case of retaliation requires a showing that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two. See Higgins v. Gonzales, 481 F.3d 578, 589 (8th Cir. 2007) (Title VII), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011); Hoover v. Norwest Priv. Mort. Banking, 632 N.W.2d 534, 548 (Minn. 2001) (MHRA).

Here, the dispute is focused on whether Dakota County's decision to place Peterson-Rojas on paid administrative leave while it investigated allegations against her constituted an adverse employment action. The relevant facts are as follows.

Dakota County hired Peterson-Rojas as an assistant probation officer in the juvenile services detention center (JSC) in December 2017. Topka Decl. Ex. 10. In that role, Peterson-Rojas, for the

most part, worked directly with juveniles in the county's custody. Peterson-Rojas Dep. at 72:2-17.  In June 2018, she was promoted to probation officer shift lead.  Id. at 73:25-74:2.  As shift lead, Peterson-Rojas still directly interacted with juveniles, but did so less than in her previous position.  Id. at 73:11-24.  Dakota County reviewed Peterson-Rojas's job performance in 2018 and 2019, and in each case her performance was deemed exemplary.  See Topka Decl. Ex. 13.

John Galloway was a case manager probation officer in Dakota County when Peterson-Rojas was hired.  Id. Ex. 6.  Although they were colleagues, John Galloway had no authority to fire, promote, or demote Peterson-Rojas.  J. Galloway Dep. at 290:12-20.

Although not entirely clear, it appears that Peterson-Rojas may have spurned advances made by John Galloway.  She believes that this led to a series of false allegations against her beginning on October 18, 2018.  Topka Ex. 14.  Galloway told a co-worker that Peterson-Rojas was being investigated for endangering her own child.  Id.  The co-worker reported the matter to management, who did an investigation and quickly concluded that Galloway's statement was unfounded.  Id. Ex. 15.  Matt Bauer, Galloway's supervisor, cautioned Galloway not to repeat the falsehood to anyone else.  Id.

Thereafter, the tension between Peterson-Rojas and John Galloway increased.  In May 2019, Peterson-Rojas reported to human

resources that she was being harassed by Galloway and his wife Letty Galloway.[4]  Id. Exs. 16, 17.  He made similar allegations against her, including that Peterson-Rojas sent messages to Letty Galloway disclosing that John Galloway had made sexual advances to her.  Id. Exs. 17-18.  Dakota County conducted an investigation and concluded that there was insufficient evidence to substantiate either claim.  Id. Ex. 16.  Dakota County recommended that Peterson-Rojas and Galloway participate in mediation to resolve their dispute.  Id. Ex. 19.  The record does not indicate if they ever did so.

On October 31, 2019, Laura Weber, a supervisor in the JSC found an envelope on her desk that contained copies of text messages purportedly from Peterson-Rojas.  Id. Ex. 21.  The text messages indicated that Peterson-Rojas was trying to get marijuana from a minor resident of the JSC with whom she had had sexual contact.  Id.  Weber reported the matter to Bauer, among others, and the Dakota County Sheriff's office.  Id.

Peterson-Rojas was placed on paid administrative leave the following day, pending an investigation by the sheriff's office, given the criminal nature of the allegations.  Id. Ex. 23;

---

[4]  Letty Galloway was an unpaid intern in the Dakota County juvenile services center from May 2017 to October 2017.  ECF No. 6, at 24 ¶ 3.  She did not work for Dakota County during the events in question.

Timmerman Dep. at 26:18-21.   While on leave, Peterson-Rojas "maintained her pay, grade, and benefits." Benish Dec. ¶ 9.

The sheriff's office concluded its investigation on January 6, 2020, finding no corroborating evidence to support the allegations and no basis to bring criminal charges. Topka Decl. Ex. 25. Dakota County reinstated Peterson-Rojas and she returned to her pre-leave position. Benish Decl. ¶ 7.

Then, on January 17, 2020, a woman contacted the Hastings Police Department to report that her minor stepson, referred to here as E.M., told her that Peterson-Rojas had a sexual relationship with him and asked to buy drugs from him. Topka Decl. Ex. 38; id. Ex. 30, at 5. The complainant also reported the alleged misconduct to E.M.'s probation officer – and Peterson-Rojas's colleague – Stephanie Bauer. Id. Ex. 30, at 5. A few days later, Dakota County again placed Peterson-Rojas on paid administrative leave so it could investigate the serious allegations. Benish Dec. ¶ 9. Apparently believing that John Galloway may have been involved in the allegations, Dakota County also placed him on paid administrative leave during the investigation. Topka Decl. Ex. 29.

In March 2020, after the Hastings police department determined that there was no basis to pursue the criminal complaint, Dakota County hired a law firm to investigate the allegations. See id. Ex. 30. The investigation took several

months and, according to Peterson-Rojas, was detailed and thorough. Peterson-Rojas Dep. at 146:22-47:7. On July 8, 2020, the law firm issued a lengthy report concluding that the misconduct allegations were not substantiated. See Topka Decl. Ex. 30. Dakota County then reinstated Peterson-Rojas to her pre-leave position. Benish Dec. ¶ 9. Peterson-Rojas's subsequent performance evaluation was, as before, very positive. Topka Decl. Ex. 35. She ultimately resigned in July 2021 to take a position with Hennepin County. Peterson-Rojas Dep. at 206:20-207:1; 216:5-14.[5]

Thus, as the record definitively establishes, during both administrative leaves, Peterson-Rojas maintained her pay, title, and benefits. Once the investigations concluded in her favor, she was promptly returned to her original position. These facts are fatal to her claims.

As well recognized by the Eighth Circuit Court of Appeals and this district, placement on paid administrative leave pending an investigation is not considered an adverse employment action. Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1008 (8th Cir. 2012); Singletary v. Mo. Dept. of Corr., 423 F.3d 886, 892 (8th Cir. 2005); Ugrich v. Itasca Cnty., Minn., No. 16-cv-

---

[5] Dakota County fired John Galloway on October 1, 2020, after determining that he likely manufactured the allegations against Peterson-Rojas. Topka Decl. Exs. 32, 34.

1008, 2017 WL 4480092, at *3 (D. Minn. Oct. 6, 2017); Watt v. City of Crystal, No. 14-cv-3167, 2015 WL 7760166, at *8 (D. Minn. Dec. 2, 2015).  This applies even to "unwanted investigations ... predicated on complaints," as is the case here.  Singletary, 423 F.3d at 892 n.5.

Given the law's clarity on this point and the undisputed fact that Peterson-Rojas was paid and provided benefits during her leave and restored to her position following the investigations, the court cannot conclude that she suffered an adverse employment action.  Peterson-Rojas was undoubtedly distressed during the investigations given the false reports against her, but that distress does not alter the court's analysis.  Nor does the court fault Dakota County for undertaking the investigations due to the serious nature of the allegations.  Dakota County had no choice but to thoroughly investigate reports of abuse of a minor.  Not doing so would have been at best irresponsible.  As a result, summary judgment is warranted on the sex discrimination and retaliation claims.

## 2.   **Hostile Work Environment**

Peterson-Rojas also contends that Dakota County is liable under Title VII and the MHRA for maintaining a hostile work environment.  Specifically relevant to this claim, Peterson-Rojas contends that John Galloway harassed her relentlessly by gossiping falsely about her and reporting her for misconduct she did not

11

engage in.  She alleges that Dakota County knew that Galloway was the source of the misinformation and nevertheless allowed it to continue.

To establish a hostile-work-environment claim, Peterson-Rojas must show that (1) she is a member of a protected group, (2) she was subjected to harassment, (3) the harassment was based on her protected status, and (4) the harassment affected a term, condition, or privilege of her employment.  See Pye v. Nu Aire, Inc., 641 F.3d 1011, 1015 n.3, 1018 (8th Cir. 2011).  "A hostile work environment exists when the workplace is permeated with discriminatory harassment to a degree that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Danquah v. Target Corp., No. 20-cv-2105, 2021 WL 3683489, at *3 (D. Minn. Aug. 19, 2021) (citation omitted).  When a hostile work environment claim is based on the acts of a non-supervisor, as here, a plaintiff "must show that h[er] employer knew or should have known of the harassment and failed to take proper action."  Gordon v. Shafer Contracting Co., 469 F.3d 1191, 1195 (8th Cir. 2006); see also Frieler v. Carlson Mktg. Grp., 751 N.W.2d 558, 571 n.11 (Minn. 2008).

Here, even assuming that the alleged hostile work environment was based on Peterson-Rojas's sex,[6] the record does not support a finding that Dakota County knew that Galloway was engaged in the misinformation campaign until it concluded the investigations into her and turned to investigate Galloway. Indeed, much of the information presented to Dakota County through employee comments occurred during the second investigation into Peterson-Rojas. See, e.g., 3d Freeman Decl. Ex. 18. Although it is true that Dakota County knew that Galloway falsely accused Peterson-Rojas of possibly abusing her own child, it immediately discounted the falsity and warned Galloway to stop spreading the lie. When it investigated the two later allegations against Peterson-Rojas, it appears that Dakota County could not definitively determine that Galloway was the culprit, although it suspected as much. Had Dakota County known Galloway was behind the allegations and failed to act, the claim could be viable.[7] But because the facts are

---

[6] The record is dubious in this regard. It is unclear that Galloway was motivated by animus based on the fact that Peterson-Rojas is a woman or simply because they had a personality conflict. Although Peterson-Rojas suggests that Galloway tried to engage her romantically, that is also not well supported by the record.

[7] On May 30, 2019, Peterson-Rojas filed a harassment complaint against Galloway with Dakota County. 3d Freeman Decl. Ex. 19. That complaint was insufficient to put Dakota County on notice of sexual harassment, however, as it does not mention harassment based on sex, nor is it clear as to the perpetrator. Id. Where the document asks for the name of the person accused of harassment, Peterson-Rojas said "'Possibly' Mr. Galloway/his wife – unsure." Id. Dakota County was unable to verify the factual basis of the complaint. Topka Decl. Ex. 16.

insufficient in this regard, the claim must be dismissed.   In coming to this conclusion, the court does not discount Peterson-Rojas's distress, nor does it condone Galloway's behavior.

**B.   Defamation Claims (Counts III and V)**

To prevail under Minnesota law on claim of defamation, a plaintiff must prove that defendant (1) published a statement of fact; (2) of and concerning her; (3) which was false; and (4) damaged their reputation and lowered their estimation in community.  Lewis v. Equitable Life Assurance Soc'y, 389 N.W.2d 876, 886 (Minn. 1986); Foley v. WCCO Television, Inc., 449 N.W.2d 497, 500 (Minn. Ct. App. 1989).   The "of and concerning" requirement represents the common law rule that a plaintiff in a defamation case must show that the statement refers to them, either explicitly or by implication.  See, e.g., New York Times Co. v. Sullivan, 376 U.S. 254, 288 (1964).  A plaintiff does not have to be specifically named in the defamatory statement so long as a reader by fair implication would understand the statement to be directed at the plaintiff.  Ruzicka v. Conde Nast Publ'ns, Inc., 999 F.2d 1319, 1322 n.6 (8th Cir. 1993).

Peterson-Rojas asserts that Dakota County defamed her on three occasions in January 2020:  (1) when Dakota County Deputy Director Brian Kopperud addressed her administrative leave in a meeting - at which she was not present; (2) in a memorandum to

14

staff, and (3) when it placed her on a second administrative leave after new allegations surfaced.  Compl. ¶ 151.

In the meeting on January 15, 2020, Kopperud allegedly told staff that Peterson-Rojas "had been moved from the Dakota County Services Center and placed on administrative leave pending a criminal investigation for allegations of having sexual relations with prior JSC resident/residents and engaging in criminal activities; [sic] selling narcotics."   Id.  ¶ 151(a)(iii).  Peterson-Rojas claims that the statement was false because the underlying accusations were false.  Id.  She believes that her reputation was harmed by the statement.  Id. ¶ 151(a)(v).

The memorandum dated January 16, 2020, included the following statement:

> Yesterday I met with staff at the JSC. The purpose of this meeting was to share that Maja Peterson-Rojas, who is a PO-shift lead and filled in as case manager while [REDACTED] was working in Adult, would be returning to the work place.  Ms. Rojas was out on paid administrative leave pending the outcome of a criminal investigation.  The allegations against Ms. Rojas were that she was buying drugs from a former resident and having sex with another former resident.  Ms. Rojas was completely exonerated of any wrong doing what so ever.  In addition, we know these accusations are coming from within the JSC from a co-worker/peer. We have been, and continue to investigate this matter, and will do so until we get to the bottom of this.  Whoever is found to be responsible for this will be held accountable and disciplined up to and including termination.
>
> ***

      Matt Bauer and I ... know that this is being
discussed inside and outside of the JSC. Rumors are
being spread that include the accusations against
Ms. Rojas. I would ask you to be a person of
integrity and not share rumors. Stop this in it's
[sic] tracks. I would also ask you to come forward
if you have information or knowledge about who is
doing this, who is starting the rumors and why. We
will get to the bottom of this and would do this for
any employee. Ms. Rojas is an exemplary employee
who is well respected and has great support within
and outside of the JSC. She will return to work on
Saturday with her head held high knowing she has
done nothing wrong and that someone is spreading
lies.... Come forward to Matt Bauer, me, Betley,
Miser or Weber and share what you know and where it
came from. We will follow the thread, do our best
to protect you and retaliation of any kind against
you or Ms. Rojas is not acceptable and will not be
tolerated.

Topka Decl. Ex. 26. Peterson-Rojas again contends that this

statement was defamatory because the allegations against her were

false.

     Peterson-Rojas also alleges that she was defamed on January

21, 2020, when she was again placed on leave given the new

allegations against her, because the new allegations were also

false. Compl. ¶ 151(c).

     None of these statements are actionable because they were, in

fact, true. See Turkish Coalition of Am., Inc. v. Bruininks, 678

F.3d 617, 625 (8th Cir. 2012) (quoting Foley, 449 N.W.2d at 500)

("With regard to the element of falsity, '[t]ruth is

a complete defense, and true statements, however disparaging, are

not actionable.'").

With respect to the January 15 meeting, Kopperud conveyed the facts surrounding Peterson-Rojas's first administrative leave. He did not indicate that she had engaged in the misconduct alleged but simply explained the allegations and why she was placed on leave. The fact that she was exonerated does not make the statement false. Similarly, the January 16 memorandum explains the basis for her leave, discloses that she was fully exonerated of any wrongdoing, and asks for information about who may have made the unfounded allegations against her. Again, the memorandum contains no falsities. Peterson-Rojas has acknowledged that the facts as stated were true and accurate. Peterson-Rojas Dep. at 135:19-137:10. As for her second leave, Dakota County did not defame her by escorting her from the building after new allegations against her were raised. She does not point to any statement made at all, let alone one that was false. The fact is that Peterson-Rojas was accused of wrongdoing, placed on leave during investigations into that alleged wrongdoing, and later fully exonerated.

Peterson-Rojas also argues that Dakota County is vicariously liable for John Galloway's defamatory statements. She generally avers that Dakota County is responsible for Galloway's statements but does not specifically identify the alleged statements or whether they were made in the scope of his employment with the county.

Under Minnesota law, "an employer is vicariously liable for the torts of an employee [including defamation] committed within the course and scope of employment." Fahrendorff ex rel. Fahrendorff v. North Homes, Inc., 597 N.W.2d 905, 910 (Minn. 1999) (citation omitted); Cognex Corp. v. VCode Holdings, Inc., No. 06-cv-1040, 2008 WL 2113661, at *36 (D. Minn. May 19, 2008). "To be within the scope of employment, the employee's misconduct must be foreseeable and must relate to and connect with acts otherwise within the scope of employment." Craft v. Panera Bread Co., No. 14-cv-5061, 2016 WL 1430015, at *4 (D. Minn. Apr. 11, 2016).

Even if she had identified specific statements, there is nothing in the record to support the conclusion that Galloway's statements were made in the course and scope of his employment with the county.  Indeed, Galloway admitted that his job duties did not require him to make false allegations as to Peterson-Rojas and her treatment of her own child and minors in her care at the JSC.  Topka Decl. Ex. 36, at 3.  Peterson-Rojas does not address the scope-of-employment issue in her briefing, and the court therefore will consider the issue conceded. See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes a waiver of that argument.").

18

**C.    Tortious Interference Claim (Count VIII)**

To recover under Minnesota law for tortious interference with prospective economic advantage, Peterson-Rojas must prove (1) the existence of a reasonable expectation of economic advantage; (2) Dakota County's knowledge of that expectation; (3) Dakota County's intentional interference with her expectation, "such that the interference was either independently tortious or in violation of a state or federal statute or regulation;" (4) a reasonable probability that she would have realized the economic advantage or benefit in the absence of Dakota County's wrongful act; and (5) damages. Paisley Park Enters., Inc. v. Boxill, 361 F. Supp. 3d 869, 881 (D. Minn. 2019) (citing Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc., 844 N.W.2d 210, 219 (Minn. 2014)). Peterson-Rojas "must specifically identify the third party that is the source of the expected future economic relationship because 'a projection of future business or unidentified customers, without more, is insufficient as a matter of law.'" Id. Peterson-Rojas has not met this standard.

First, because Peterson-Rojas has failed to establish that Dakota County engaged in tortious or other wrongdoing, there is no basis to conclude that it legally interfered with any of her prospective economic advantages. Second, Peterson-Rojas in fact secured other work with Hennepin County after Dakota County investigated her, exonerated her, and gave her excellent

performance reviews.[8]   As such, Peterson-Rojas cannot establish that she incurred any damages or is unemployable thanks to Dakota County, as she claims.   Whatever occurred during or after her employment with Hennepin County that may create future hurdles to her future employability is irrelevant to this case, as it occurred beyond the scope of this case.

### III. Dakota County's Motion Against Letty Galloway

Letty Galloway alleges that that Dakota County violated Minn. Stat. § 260E.35, subdiv. 3(m) by disclosing that, in December 2019, she reported to Dakota County employee Laura Weber that Peterson-Rojas was engaged in misconduct with minors.   ECF No. 6 ¶ 9. According to Letty, Weber instructed her to file a report with Dakota County Child Protective Services, which she did.   Id.   At some point, Peterson-Rojas became aware that Letty accused her of misconduct, which led Peterson-Rojas to file a Petition for Harassment Restraining Order (HRO) against Letty in state court. See Simpson Decl. Ex. 5.   Weber was a witness at the hearing and disclosed the conversation she had with Letty regarding the alleged misconduct.   Topka Dec. Ex. 1, at 6-9.   It is unclear, however, exactly how Peterson-Rojas first learned of Letty's complaint.

---

[8]   To the extent she bases her claim on the lack of promotion within Dakota County, the record is also insufficient to support such a claim.   Again, there is no evidence that Dakota County engaged in wrongdoing.   Also, Peterson-Rojas voluntarily left Dakota County to take a position elsewhere, which necessarily precluded her from being promoted.

The court denied the petition, concluding that there was insufficient evidence to establish that Letty was harassing Peterson-Rojas. Id. at 40.

Minnesota law prohibits any person investigating the maltreatment of a minor from intentionally disclosing the identity of the person who reported the alleged maltreatment. Minn. Stat. § 260E.35, subdiv. 3(m). Persons in violation of this law are subject to civil liability. Minn. Stat. § 260E.35, subdiv. 4(c); Minn. Stat. § 13.08, subdiv. 1.

In order for Dakota County to be held liable for the disclosure, a Dakota County employee must have been acting within the scope of their employment. Hervey v. Cnty. Of Koochiching, No. 04-cv-4537, 2006 WL 2990515, at *17 (D. Minn. Oct. 20, 2006). In assessing scope of employment, the court considers (1) whether the county benefitted from the conduct and (2) whether the purpose in disclosing the information was "entirely personal and therefore not within the scope of [their] employment." Id.

Peterson-Rojas testified that employees at Dakota County assisted her in preparing her HRO petition, which is presumably how she learned of Letty Galloway's identity. Peterson-Rojas Dep. at 296:6-13, 328:25-29:2. But the facts in the record are insufficient to establish who disclosed Letty's identity as the

reporter and under what circumstances that disclosure was made.[9] Absent such information, the court cannot determine whether the statute was violated and nor could a jury. As a result, summary judgment is warranted.

## IV. The Galloway Defendants' Motion Against Peterson-Rojas

### A. Defamation by John Galloway (Count III)

In her responsive brief, Peterson-Rojas cites to numerous alleged examples of defamation by John Galloway, see ECF No. 187, at 8, 12, 13, 16, 35, 36, 37. In Minnesota, however, "defamation claims must be pleaded with specificity, including who made the defamatory statements, to whom were they made, and where." Walker v. Wanner Eng'g, Inc., 867 F. Supp. 2d 1050, 1056 (D. Minn. 2012). This means that "defamation claims are limited to what is identified in the complaint." Sherr v. HealthEast Care Sys., 999 F.3d 589, 598 (8th Cir. 2021). As a result, the court will only consider the two allegedly defamatory statements set forth in the complaint.

First, Peterson-Rojas alleges that in November 2019 and "other dates into 2020" John falsely told fellow Dakota County employees Gabriela Wilson, Nicholas Murphy, Nicholas Murch, and

---

[9] Indeed, as noted, in May 2019, Peterson-Rojas filed an internal complaint with Dakota County indicating that "Galloway/his wife" may be harassing her. 3d Freeman Decl. Ex. 19. This shows that Peterson-Rojas suspected that Letty was engaged in a campaign of harassment against her months before Letty made the report, thus undermining Letty's disclosure claim.

Evan Klema that she had been fired for "buying and selling narcotics to and from past/current residents" of the JSC and that she was "having sexual relations with past/current [JSC] residents." Compl. ¶ 134(a)(ii), (iv).

Second, Peterson-Rojas alleges that in May or June of 2019, John gave an envelope to Weber and other unidentified county employees which contained a letter containing fake screenshots of text messages showing that Peterson-Rojas was attempting to buy drugs from a JSC resident and that she had sexual relationships with previous JSC residents. Id. ¶ 134(b)(ii), (iv).

As noted above, in order to prevail on a claim for defamation, Peterson-Rojas must establish that the false information was published to third parties. Lewis, 389 N.W.2d at 886. With respect to the first alleged statement, she has failed to do so. Although she identified several individuals in the complaint, the record is devoid of the factual support necessary to establish the required element of publication. There are no deposition transcripts or affidavits from any of the alleged recipients as to the false statement, nor is there any other kind of admissible evidence to substantiate the allegation as to publication.[10]

_____

[10]   Peterson-Rojas cites to unauthenticated "staff notes" written by an unidentified person and attached to the unnotarized and unsworn "Statement Third Declaration of Freeman" in support of her position. See ECF No. 189. Given its legal infirmities, the court will not consider the notes on summary judgment. See Fredin v. Middlecamp, 500 F.3d 752, 773 (D. Minn. 2020) (holding that

As to the second statement, there are insufficient facts in the record to link John to the envelope and its contents. Although he seems the likely culprit, the court cannot tie him to the document based on the record provided. There is also no evidence or testimony from the alleged recipient, Weber, to help shore up the matter. Nor is there evidence regarding the other alleged recipient of the envelope. Under these circumstances, the court cannot conclude that there is a genuine issue of material fact precluding summary judgment. The defamation claim against John therefore must be dismissed.

**B.   Defamation by Letty Galloway (Count IV)**

The complaint alleges that Letty Galloway defamed Peterson-Rojas on three occasions. First, she claims that on November 6, 2020, Letty called Dakota County employee Tawana Turk and reported that she had audio recordings of Peterson-Rojas having sexual encounters with a JSC resident and that she was going to send the recording to all JSC employees. Compl. ¶ 143(a)(ii), (iv).

Second, Peterson-Rojas alleges that also on November 6, 2020, Letty called the JSC and told superintendent Matt Bauer that her child planned to turn himself into the JSC due to an active warrant but that she did not want her child to have contact with "child molesters and staff that have sex with minors" and that she knew

---

"the Court will not consider ... an unsworn, un-notarized statement" on summary judgment).

that "she" had sex with minors." Id. ¶ 143(b)(ii), (iv).  The
complaint does not allege that Letty specifically identified
Peterson-Rojas.  See id.  However, in a document provided in
connection with the crossclaim brought by Letty against Peterson-
Rojas, Bauer testified that Letty made the statements to him.
Topka Decl. Ex. 1, at 13-15.  Bauer also testified that he did not
take any action against Peterson-Rojas because the same
allegations against her were previously investigated and found to
be unsubstantiated.  Id. at 16.

Third, Peterson-Rojas alleges that on December 4, 2020,[11]
Letty called Weber and told her that Peterson-Rojas was engaging
in drug transactions with a minor.  Compl. ¶ 143(c)(ii), (iv).
She claims that the report "was written in a corrective action and
placed in [her] personnel file" thus damaging her reputation.  Id.
¶ 143(c)(vi).

The first statement is not viable because there is no credible
evidence that Letty ever made the alleged statement to Turk.  The
only evidence in this regard comes from the deposition testimony
Peterson-Rojas, which is self-serving and insufficient to create

---

[11]   The complaint appears to have incorrectly stated that
Letty made the report to Weber in December 2020, when in fact it
occurred in December 2019.  See ECF No. 6 ¶ 9.  The court will
assume the error was a typo and will treat the report as having
been made in 2019 rather than 2020.

a genuine issue of material fact.[12]   It would have taken little effort to depose or secure an affidavit from Turk.   Peterson-Rojas's failure to do so suggests that the allegation is tenuous, at best.   The court cannot allow this aspect of the claim to proceed under these circumstances.

The second statement is insufficient to establish defamation because Bauer understood it to be false because it followed the county's investigation, which cleared Peterson-Rojas of wrongdoing.  As such, the statement did not mar her reputation and is not actionable.

The third statement is also not actionable.  Letty admits that she contacted Weber in December 2019 to report that E.M. told her that Peterson-Rojas had sex with him and wanted to buy drugs from him.  She denies definitively saying that the incidents in question occurred, but felt the need to report the allegations given their gravity.  L. Galloway Dep. at 266:13-23.  Letty argues that her statement to Weber is subject to absolute privilege.

---

[12]   Letty argues that the alleged statement cannot support a claim for defamation because it is based on hearsay.   The court disagrees because the statement is offered not for its truth but rather to show that the statement was made in the first place. See Walker, 867 F. Supp. 2d at 1057 ("The statements establishing that Grewe made defamatory statements at an employee assembly are not hearsay because they are not being offered for their truth. ... Rather, the statements are being offered to show that Grewe made the statements to the employees.").

Given that the two investigations into Peterson-Rojas later revealed that she had not, in fact, engaged in sexual misconduct with JSC minors or sought to buy drugs from minors, there is little doubt that Letty's report to Weber was false.  According to Letty, however, she was entitled to make the statement because she merely repeated what she heard and did not know that it was false at the time.  She also felt compelled to make the report because it involved the safety of minors under Peterson-Rojas's care.  She essentially argues that she is protected under the doctrine of qualified privilege.

"One who makes a defamatory statement will not be held liable if the statement is published under circumstances that make it qualifiedly privileged and if the privilege is not abused."  Bol v. Cole, 561 N.W.2d 143, 149 (Minn. 1997) (quoting Lewis v. Equitable Life Assurance Soc'y of the U.S., 389 N.W.2d 876, 889 (Minn. 1986)).  "Qualified privilege applies when a court determines that 'statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory.'"  Id.  "For a defamatory statement to be protected by a qualified privilege, the statement must be made in good faith and 'must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause.'"  Id. (quoting Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, at 256-57 (Minn. 1980) (quoting Hebner v. Great N. Ry., 80

N.W. 1128, 1129 (Minn. 1899)).  Qualified privilege is a question

of law for the court to decide.  <u>Lewis</u>, 389 N.W.2d at 889.

Although  Peterson-Rojas  argues  that  Letty  knew  the

allegations were false and reported them only to disparage her,

there is insufficient evidence in the record to corroborate her

position.  She cannot defeat summary judgment based on her own

belief - she must point to concrete facts in the record.  Her

failure to do so is fatal to her claim.  Under these circumstances,

the court must conclude that qualified privilege protected Letty's

statement.  Count IV is dismissed.

### C.   Tortious Interference Claims (Counts VI and VII)

For the reasons stated above with respect to the same claim

against Dakota County, summary judgment is warranted on the

tortious interference claims against the Galloways.


CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.   The motion for summary judgment by Dakota County against

Letty Galloway [ECF No. 153] is granted;

2.   The motion for summary judgment by Dakota County against

Peterson-Rojas [ECF No. 155] is granted;

3.   The motion for summary judgment by the Galloways [ECF

No. 161] is granted; and

4.    The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: January 6, 2023

                              s/David S. Doty
                              David S. Doty, Judge
                              United States District Court